IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 5:17-CR-00024-RWS |
| | § | |
| v. | § | |
| | § | |
| MYRNA GUADALUPE CORRUJEDO(1), | § | |
| And MANUEL HERNANDEZ (2) | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER ADOPTING
## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

The above-entitled and numbered criminal action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. On December 22, 2017, the Magistrate Judge issued a Report and Recommendation (Docket No. 39) recommending Defendant Manuel Hernandez's motion to suppress (joined by Defendant Corrujedo) (Docket No. 33) be denied. On January 17, 2018, the Magistrate Judge entered Revised Citations to Certified Transcript (Docket. No. 41). The Report and Recommendation of the Magistrate Judge, which contains her proposed findings of fact and recommendations for the disposition of such action, has been presented for consideration. No objections have been filed to the Report and Recommendation. The Court, therefore, reviews the Report and Recommendation for clear error. FED. R. CIV. P. 72(b).

As set forth in considerable detail in the Magistrate Judge's 46-page Report and Recommendation, this case concerns an August 9, 2017 traffic stop on Interstate 30 ("I-30") in Titus County, Texas by Texas Department of Public Safety ("DPS") Trooper Charles Cannon

("Cannon"). Defendant Myrna Guadalupe Corrujedo ("Corrujedo") was the driver, and Defendant Manuel Hernandez ("Hernandez") was the only other occupant of the vehicle, riding in the front passenger seat. Defendants were stopped for speeding, and while Cannon was working on a warning ticket, he noticed numerous things, all of which aroused suspicion.

While investigating and issuing a warning ticket for the speeding violation, Cannon was entitled to ask for Defendant Corrujedo's driver's license and to inquire as to Defendants' travel. According to the Magistrate Judge, "Trooper Cannon's questioning of Defendants was within the scope of the detention justified by the traffic stop, particularly after Cannon noticed Corrujedo's hands and arms were shaking; that the key in the ignition was the only key on the key chain; that the key chain included a medallion with a picture of the Virgin Mary, also known as Our Lady of Guadalupe; that both Corrujedo and Hernandez's chests were moving in and out in a rapid manner; that they each displayed a high level of anxiety; and that he could smell air freshener inside the car, all of which aroused suspicion for Cannon based on his training." (Report and Recommendation at 24-25) (citing *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004)(en banc)). Cannon then asked Defendant Corrujedo to exit the car and to sit inside his patrol car while he ran the standard license and insurance computer checks and completed the written warning. *Id*. at 25.

The Magistrate Judge noted the registration and license checks Cannon initiated on the vehicle and on the Defendants were equally within the legitimate scope of the stop. (Report and Recommendation at 25) (citing *Brigham*, 382 F.3d at 509). During this time, Cannon's suspicion was also "fueled" by "Corrujedo's nervousness, her touching her face and picking her nose, her labored breathing, and her description of Defendants' travel." (Report and Recommendation at 25).

Cannon then exited his patrol car to go and speak with Defendant Hernandez who was still seated in the passenger seat of the vehicle. *Id.* "Cannon observed Hernandez's breathing also appeared labored; his eyes were quivering; and his hand was visibly shaking while producing his driver's license." *Id.*

When Cannon returned to his patrol car to run a routine check of Hernandez's driver's license, he asked Corrujedo whether she had ever been arrested. *Id.* Corrujedo responded she had not. *Id.* However, while waiting on the return of information on Hernandez, Cannon received a return of information on Corrujedo showing she had been arrested in Michigan in 2007 for larceny. *Id.* "Corrujedo's answers to Cannon's questions about whether she had been arrested was an indication of deception to Cannon." (Report and Recommendation at 25-26).

"Shortly after learning Corrujedo had initially been untruthful about her criminal history, Cannon learned that, although Hernandez had no outstanding warrants, he had been stopped in the same vicinity on I-30 on May 22, 2017." (Report and Recommendation at 26). This information, coupled with the fact that Hernandez had explained to Cannon that he was living on disability income, further increased Cannon's suspicion that Hernandez might be involved in illicit activity, because a person living on fixed income like Hernandez would normally have difficulty affording frequent travel across the country. *Id.*

When making reasonable suspicion determinations, courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspected legal wrongdoing. *United States v. Grant,* 349 F.3d 192, 197 (5th Cir. 2003), *cert. denied* 540 U.S. 1227 (2004). Officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information

available to them that might well elude an untrained person. *Id.* at 197. Courts should err on the side of deferring to the knowledge and experiences of a trained law enforcement officer's ability to distinguish between innocent and suspicious activities. *United States v. Mendenhall,* 446 U.S. 544, 563 (1980).

Here, based on the totality of circumstances, Cannon believed Corrujedo and Hernandez were attempting to hide some type of criminal activity, so he separately asked each of them for consent to search the car. Cannon requested Corrujedo's consent to search the car in English and Spanish, and she gave her consent. (Report and Recommendation at 2). Cannon then asked Hernandez in Spanish for consent to search the car, and he also gave his consent. *Id*. After obtaining consent from both Corrujedo and Hernandez, Cannon began an initial search of the car, approximately fourteen minutes after Cannon first made contact with Defendants. *Id*. During this initial search, "Cannon quickly observed paint that was not consistent with original equipment manufacturer standards in an area just behind the backrest of the rear bench seat, and he observed the car had been altered in a manner suggesting there was a hidden compartment." (Report and Recommendation at 2).

Cannon requested assistance, intending to transport the car to a nearby DPS office to open and search the compartment in the car. *Id*. However, before the car was moved, Trooper Brad Fein, a drug-detection canine handler who was already at the scene, deployed his drug-detection canine. During a free-air sniff of the car, the canine alerted at the rear driver's side door, in the area where Cannon had detected the hidden compartment. *Id.*

Cannon decided to take Defendants into investigative detention while he completed searching the car. *Id*. He then gave both defendants *Miranda* warnings (Corrujedo in English and

Hernandez in Spanish). *Id.* The vehicle was moved to the DPS office for further inspection. *Id.* As the search continued, the troopers found approximately 10.05 kilograms of cocaine in a false compartment beneath the rear seat of the vehicle, and Defendants were arrested. *Id.*

The Court agrees with the Magistrate Judge that Cannon had reasonable suspicion to detain Defendants to investigate, and "this reasonable suspicion continued for as long as it took to diligently pursue a means of investigation that was likely to confirm or dispel his suspicion." (Report and Recommendation at 27) (citing *United States v. Lee*, No. 1:06-CR-125(9), 2007 WL 1567098, at *8 (E.D. Tex. May 29, 2007)). Cannon was still investigating the traffic offense at the time he received consent to search the vehicle. Thus, as held by the Magistrate judge, the detention at that point continued to be supported by the facts that justified its intrusion and therefore was lawful. (Report and Recommendation at 27) (citing *Brigham*, 382 F.3d at 512).

The Court further agrees with the Magistrate Judge that Defendants freely and voluntarily gave consent to search the vehicle, and Cannon's initial search of the vehicle on the roadside did not exceed the scope of Defendants' consent. As noted by the Magistrate Judge, during the limited scope of the consensual search, Cannon developed probable cause to believe the vehicle contained contraband or evidence of criminal activity, justifying an expansion of the search of the vehicle and the containers within it without a search warrant pursuant to the "automobile exception." (Report and Recommendation at 35) (citations omitted). Specifically, in his initial search Cannon discovered evidence of a hidden compartment. The officers then lawfully moved the vehicle to the DPS office to conduct a more thorough search. *See United States v. Beltran*, 650 F. App'x 206, 208 (5th Cir. 2016) (unpublished).

Finally, the Court notes the Magistrate Judge's alternative basis for her recommendation –

the canine alert which provided additional probable cause to search. (Report and Recommendation at 36). According to the Magistrate Judge, the officers had probable cause to search the vehicle and were authorized to examine behind the rear seat after the drug dog alerted. (Report and Recommendation at 44). The Court agrees. The results of the dog sniff gave the officers additional probable cause to search the vehicle, and no warrant was necessary under the automobile exception. In sum, the Court agrees with the Magistrate Judge that the officers "obtained the evidence in this case through a series of lawful steps," and suppression is not appropriate. (Report and Recommendation at 43).

The Court, having carefully reviewed the relevant briefing, the Report and Recommendation, and the Revised Citations to Certified Transcript, is of the opinion the findings and conclusions of the Magistrate Judge are correct. The Court, therefore, **ADOPTS** the Magistrate Judge's report as the findings and conclusions of the Court. Accordingly, it is

**ORDERED** that Defendant Manuel Hernandez's Motion to Suppress (Docket No. 33) is **DENIED.**

**SIGNED this 6th day of February, 2018.**

*Robert W. Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE